**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MERCY FLIGHT CENTRAL, INC. and EMS**
**AIR SERVICES OF NEW YORK, INC.,**

                    **Plaintiffs,**

                  v.                            5:08-CV-1041
                                                  (FJS/GHL)

**STATE OF NEW YORK DIVISION OF STATE**
**POLICE; ONONDAGA COUNTY SHERIFF'S**
**DEPARTMENT; CENTRAL NEW YORK**
**REGIONAL EMERGENCY MEDICAL**
**SERVICES COUNCIL; and TLC EMERGENCY**
**MEDICAL SERVICES, INC.,**

                    **Defendants.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **UNDERBERG & KESSLER, LLP**<br>300 Bausch & Lomb Place<br>Rochester, New York 14604<br>Attorneys for Plaintiffs | **PAUL F. KENEALLY, ESQ.**<br>**RICHARD A. DOLLINGER, ESQ.** |
| **ONONDAGA COUNTY DEPARTMENT**<br>**OF LAW**<br>John H. Mulroy Civic Center<br>421 Montgomery Street, 10th Floor<br>Syracuse, New York 13202<br>Attorneys for Defendant Onondaga County<br>Sheriff's Department | **KATHLEEN M. DOUGHERTY**, **ESQ.** |
| **PINSKY & SKANDALIS**<br>5790 Widewaters Parkway<br>P.O. Box 250<br>Syracuse, New York 13214-0250<br>Attorneys for Defendant TLC Emergency<br>Medical Services, Inc. | **BRADLEY M. PINSKY, ESQ.** |
| **OFFICE OF THE NEW YORK STATE** | **SENTA B. SIUDA, AAG** |

| | |
|---|---|
| **ATTORNEY GENERAL** | **EMIL J. BOVE, JR., AAG** |
| 615 Erie Boulevard West | |
| Suite 102 | |
| Syracuse, New York 13204-4800 | |
| Attorneys for Defendants New York State | |
| Police and Central New York Regional | |
| Emergency Medical Services Council | |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

In this action, Plaintiffs Mercy Flight Central, Inc. ("Mercy Flight") and EMS Air Services of New York, Inc. ("EMSAS") (collectively "Plaintiffs"), providers of emergency medical air transportation services, allege that Defendants are violating federal law by providing competing services without proper certification. Currently before the Court are the following motions: (1) Defendant TLC Emergency Medical Services, Inc.'s ("TLC") motion for an order dismissing the action for lack of subject matter jurisdiction; (2) Defendant Onondaga County Sheriff's Department's ("Sheriff's Department") motion for an order dismissing the complaint for lack of subject matter jurisdiction;[1] and (3) Plaintiffs' cross-motion for leave to amend the

---

[1] Although Defendants argue that the Court lacks subject matter jurisdiction over this case, their arguments do not relate to a jurisdictional issue, as this is a federal question case. Rather, the parties discuss Plaintiffs' ability to prove that the statutes in question bind Defendants. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) (noting that "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief – a merits-related determination"). The statute in question, 49 U.S.C. § 41101(a)(1), does not "rank a statutory limitation on coverage as jurisdictional;" and, therefore, the Court will not treat it as jurisdictional in nature. *Id.* at 516. As such, the Court will analyze the claims under Rule 12(b)(6) and not Rule 12(b)(1).

complaint.[2]

## II. BACKGROUND[3]

Plaintiffs are private not-for-profit corporations that jointly provide emergency medical helicopter transportation services to individuals throughout New York State. More specifically, Plaintiff Mercy Flight provides such transportation using helicopters that Plaintiff EMSAS owns and operates.

Defendants State Police and Sheriff's Department also conduct emergency medical helicopter operations. Defendant State Police, which has offices throughout the State of New York, performs its medical helicopter operations in various areas of the state, including the Western and Northern Districts of New York. In addition to employee crew members, State Police helicopters carry non-employee emergency medical providers and patients. Plaintiffs allege that Defendant State Police charges the patients it transports a fee for their transportation, as well as a fee for the emergency medical provider's services.

---

[2] Plaintiffs commenced this action in the Western District of New York. In his order transferring the case to this Court, Judge Siragusa addressed Defendants New York State Police's ("State Police") and Central New York Regional Emergency Medical Services Council's ("Council") motions. He dismissed both of these Defendants on Eleventh Amendment immunity grounds. He also granted Defendants Sheriff's Department's and TLC's motions to transfer venue. Judge Siragusa declined, however, to address Defendants Sheriff's Department's and TLC's motions to dismiss or the impact of Plaintiffs' motion to amend their complaint, leaving resolution of these motions to this Court. Thus, the only Defendants remaining are Defendants Sheriff's Department and TLC. In light of Plaintiffs' motion to amend the complaint, however, it is still necessary for the Court to address the merits of Plaintiffs' claims against Defendants State Police and Council.

[3] Unless otherwise indicated, the Court has adopted the "Background" facts from Judge Siragusa's September 12, 2008 Order. *See* Dkt. No. 36.

Defendant Sheriff's Department, which has offices in Onondaga County, performs its medical helicopter transportation operations solely within the Northern District of New York. In addition to employee crew members, Defendant Sheriff's Department's helicopters transport volunteer emergency medical providers and patients. Plaintiffs allege that Defendant Sheriff's Department charges the patients it transports a fee for their transportation, as well as a fee for the emergency medical provider's services.

Defendant Council is a regional emergency medical services council organized under New York Public Health Law § 3003, with offices in Syracuse, New York. *See* Affidavit of Warren Darby sworn to September 20, 2007 ("Darby Aff."), at ¶ 13. Defendant Council operates in the Counties of Cayuga, Cortland, Onondaga, Oswego, and Tompkins. *See id.* In or about July 2004, Defendant Council organized a clearinghouse for requests for medical helicopter services. *See id.* at ¶ 15. In that regard, it created a chart of medical helicopter transportation providers, including Defendants State Police and Sheriff's Department, and arranged to have Defendant TLC, a private ground ambulance service provider, with offices in the Northern District of New York, relay requests for medical helicopter transport to providers on the chart. *See id.* at ¶¶ 15-16. Defendant TLC relays such requests for patients located within the counties of Onondaga, Cayuga, Cortland, Oswego, Tompkins, St. Lawrence, Lewis, Jefferson, Madison, Herkimer, and Oneida. *See id.* at ¶ 19. Neither Defendant Council nor Defendant TLC are directly involved in the operation of aircraft.

Plaintiffs' helicopter transport operations are "civilian aircraft operations" within the meaning of the Federal Aviation Act ("FAA") and, therefore, are required to be certified pursuant to 49 U.S.C. § 41101(a). In that regard, 49 U.S.C. § 41101(a)(1) provides that,

"[e]xcept as provided in this chapter or another law – (1) an air carrier may provide air transportation only if the air carrier holds a certificate issued under this chapter authorizing the air transportation[.]" 49 U.S.C. § 41101(a)(1). On the other hand, the parties agree that section 41101(a) does not require "public aircraft" to be certified. *See* 41 C.F.R. § 102-33.165. Simply because a state or local government owns and operates an aircraft, however, does not mean that the aircraft qualifies as a "public aircraft."

Accordingly, this dispute primarily centers around whether the aircraft that Defendants State Police and Sheriff's Department operate qualify as "public aircraft" within the FAA's meaning.

### III. PROCEDURAL HISTORY

On June 26, 2007, Plaintiffs commenced this action in the Western District of New York and alleged two separate causes of action. The first cause of action alleges that Defendants State Police and Sheriff's Department violated "the Federal Aviation Act," presumably meaning 49 U.S.C. § 41101(a)(1). *See* Proposed First Amended Complaint at ¶ 56.[4] The second cause of action alleges that Defendants Council and TLC aided and abetted Defendants State Police and Sheriff's Department in the alleged FAA violations "by dispatching State Police helicopters or Sheriff's Department helicopters to emergency service locations." *See id.* at ¶ 64.

---

[4] The first cause of action in the original complaint and the proposed first amended complaint are substantially the same. In the first cause of action in the proposed first amended complaint, Plaintiff no longer seeks money damages from Defendants Sheriff's Department and State Police. *Compare* Complaint at ¶ 57; *with* Proposed First Amended Complaint ¶ 60. As to the second cause of action, the allegations are identical in the original complaint and the proposed first amended complaint. *Compare* Complaint at ¶¶ 58-62; *with* Proposed First Amended Complaint ¶¶ 61-65.

From September to October 2007, all Defendants in this action filed motions to transfer venue and to dismiss. On January 15, 2008, Plaintiffs filed a cross-motion for leave to amend their complaint to, among other things, add as a defendant, in place of the State Police, the acting Superintendent of the State Police, and to add the Onondaga County Sheriff as a defendant while retaining the claim against Defendant Sheriff's Department. The proposed first amended complaint also alleges that Defendant State Police conducts medical helicopter operations both in and outside New York State. Moreover, the proposed first amended complaint asserts a state-law claim against Defendants Council and TLC for tortious interference with business relationships. Finally, the proposed first amended complaint omits the earlier claims for money damages against Defendants State Police and Sheriff's Department and replaces them with claims for injunctive relief against the Acting Superintendent of the New York State Police and the Onondaga County Sheriff.

## IV. DISCUSSION

**A.     Standard of review**

*1. Motion to dismiss*

Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g., Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir. 2000) (holding that, "[a]t the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims'" (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998))). Accordingly, the court must accept the factual allegations in the complaint as true, *see Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007) (*per curiam*) (citation

omitted), and "draw all reasonable inferences in favor of the plaintiff," *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir. 1995) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).

*Iqbal* offered district courts additional guidance regarding the consideration of motions to dismiss under Rule 12(b)(6).  Citing its earlier decision in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), the Court explained that,

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal,* 129 S. Ct. at 1949 (internal quotation and other citation omitted).

When considering a motion to dismiss, a court may examine (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as exhibits or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit.  *See Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted).

### *2. Motion to amend the complaint*

Since Plaintiffs filed a cross-motion to amend their complaint in response to Defendants' motions to dismiss, the Court will discuss Defendants' motions as if they had directed those motions to Plaintiffs' complaint and then will determine whether Plaintiffs' proposed

amendments would cure any deficiencies in their original complaint.

Federal Rule of Civil Procedure 15(a) permits amendment of a complaint and specifies that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

### B.     Relevant provisions of the FAA

Private rights of action are not implied under the FAA. *See Bonano v. East Caribbean Airline Corp.*, 365 F.3d 81, 84-85 (1st Cir. 2004). The FAA generally relies on public enforcement of its provisions, including investigations and civil actions that the Secretary of Transportation or the Attorney General commence. *See Weiss v. El Al Isr. Airlines, Ltd.*, 433 F. Supp. 2d 361, 371 (S.D.N.Y. 2006) (citations omitted).

The FAA itself creates a single private right of action in section 46108, which provides that "[a]n interested person may bring a civil action in a district court of the United States against a person to enforce section 41101(a)(1) of this title." 49 U.S.C. § 46108. Section 41101(a)(1), in turn, requires an "air carrier" to obtain a certificate. Specifically, it provides that, "[e]xcept as provided in this chapter or another law . . . an air carrier may provide air transportation only if the air carrier holds a certificate issued under this chapter authorizing the air transportation[.]" 49 U.S.C. § 41101(a)(1).

The term "air carrier" is defined as "a citizen of the United States undertaking by any

means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2).[5] The parties do not dispute that "civilian aircraft operations" are required to be certified within the

---

[5] It is undisputed that only "air carriers" are subject to the certification requirements at issue in this case. An "air carrier" is defined as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). The term "citizen of the United States" is limited to an individual, a partnership, or a corporation. *See id.* at § 40102(a)(15)(A)-(C). As such, it is unclear whether Congress intended for this provision to apply to government entities.

The FAA has a very detailed remedial scheme for violations of its provisions. Generally, the Secretary of Transportation (or his delegate) must take remedial action, as the Act only creates a single private cause of action, which is very limited in scope. *See* 49 U.S.C. § 46101; 49 U.S.C. § 46108. Throughout other parts of the Act, "person" is used when describing the Secretary's authority to enforce the provisions of the Act. *See, e.g.*, 49 U.S.C. § 46101(a) (providing that a "person" may file a complaint with the Secretary "about a person violating this part or a requirement described under this part"); 49 U.S.C. § 46106 (providing that the Secretary may bring an action against a "person" to enforce any requirement of this Act or regulations promulgated therefrom). Under the FAA regulations, "person" is defined as "an individual, firm, partnership, corporation, company, association, joint-stock association, or governmental entity." *See* 14 C.F.R. § 1.1.

Defendants allege that they are only subject to the less stringent certification requirements in 14 C.F.R. part 91, with which they have complied. This appears to be a strong argument. Part 91 provides that it is applicable to "[e]ach **person** operating an aircraft in the airspace overlying the waters between 3 and 12 nautical miles from the coast of the United States" and that it applies to the "operation of aircraft . . . within the United States. . . ." 14 C.F.R. § 91.1(a), (b) (emphasis added). Based on this language, it appears as if Congress specifically excluded government bodies from the certification requirements for "air carrier[s]."

It is unclear why Congress would use "citizen" to define "air carrier," exclude any reference to government (or even "person") in its definition of "air carrier," yet intend the restrictions on "air carriers" to apply to government bodies. The FAA is operating under the assumption that, in certain circumstances, government-owned aircraft are subject to the provisions at issue here. Based on the plain language of the statute and the applicable regulations, however, it appears that this assumption is incorrect.

Although there is a question as to whether Congress intended to exclude governmental entities from the restrictions on "air carriers," the Court does not need to resolve that issue to dispose of these motions. Therefore, for purposes of these motions only, the Court will assume that Defendants are "air carriers."

meaning of 49 U.S.C. § 41101(a) and that "public aircraft" are not required to obtain the same certification. *See* 41 C.F.R. § 102-33.165 (stating that "[a] public aircraft is not subject to many Federal Aviation Regulations, including requirements relating to aircraft certification, maintenance, and pilot certification").

Accordingly, the outcome of Defendants State Police's and Sheriff's Department's motions to dismiss hinges on whether they are operating "public aircraft" and whether they provide "air transportation" within the FAA's meaning.

### C.     Defendants State Police and Sheriff's Department

#### *1. Air transportation*

As mentioned above, "air carriers" who provide "air transportation" are required to hold the certificate at issue here. "[A]ir transportation" is limited to "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." 49 U.S.C. § 40102(a)(5). The FAA regulations define "[i]nterstate air transportation" as

> the carriage by aircraft of persons or property as a common carrier for compensation or hire, or the carriage of mail by aircraft in commerce: (1) Between a place in a State or the District of Columbia and another place in another State or the District of Columbia; (2) Between places in the same State through the airspace over any place outside that State; or (3) Between places in the same possession of the United States[.]

14 C.F.R. § 1.1.

The proposed first amended complaint states that Defendant State Police's helicopters are not only used for emergency transports within New York but "the State Police also transports patients in need of medical services from places inside the State of New York to points outside

-10-

the State of new (sic) York, including but not limited to, the State of Vermont and the Commonwealth of Pennsylvania." *See* Proposed First Amended Complaint at ¶ 41. In neither the complaint nor the proposed first amended complaint, however, do Plaintiffs allege that Defendant Sheriff's Department transports patients outside of New York. They merely state that Defendant Sheriff's Department provides medi-vac services in the same geographic area as Plaintiff Mercy Flight and further state that Plaintiff Mercy Flight provides its services "throughout New York State. . . ." *See id.* at ¶¶ 20, 42.

Although Plaintiffs sufficiently allege that Defendant State Police provides "air transportation," they have failed to make such allegations regarding Defendant Sheriff's Department. Accordingly, the Court grants Defendant Sheriff's Department's motion to dismiss. *See SeaAir N.Y., Inc. v. City of N.Y.*, 250 F.3d 183, 186-87 (2d Cir. 2001) (holding that a preemption provision of the FAA which also applied only to "air carriers" was inapplicable because the plaintiffs failed to prove that they provided interstate transportation as withing the meaning of the FAA). Further, the Court denies Plaintiffs' request to amend their complaint insofar as they seek to add the Onondaga County Sheriff as a Defendant because such an amendment would be futile.

### 2. *Public aircraft*

It is undisputed that if the aircraft that Defendant State Police operate are "public aircraft," then they do not need to be certified pursuant to 49 U.S.C. § 40125. A "public aircraft" is defined as "[a]n aircraft owned and operated by the government of a State, the District of Columbia, or a territory or possession of the United States or a political subdivision of one of

-11-

these governments, except as provided in [49 U.S.C. §] 40125(b)." 49 U.S.C. §

40102(a)(41)(C). A government-owned and operated aircraft is not considered a "public

aircraft" "when the aircraft is used for commercial purposes or to carry an individual other than a

crewmember or a qualified non-crewmember." 49 U.S.C. § 40125(b). Accordingly, in order for

the aircraft to be deemed "public aircraft," Defendants must show that those aircraft (1) are

owned and operated by a government;[6] (2) carry only "crewmembers" and "qualified non-

crewmembers;" and (3) are not used for "commercial purposes." *Id.*


### *a. Crewmembers and qualified non-crewmembers*

"Qualified non-crewmember" is defined, in relevant part, as "an individual, other than a

member of the crew, aboard an aircraft . . . whose presence is required to perform, or is

associated with the performance of, a governmental function." 49 U.S.C. § 40125(a)(3).

Plaintiffs contend that the medical personnel on board the aircraft that Defendant State Police

operate are not "qualified non-crewmembers" because these aircraft are not performing

"governmental functions," thereby bringing these aircraft outside the definition of "public

aircraft." *See* Proposed First Amended Complaint at ¶¶ 44, 46-47.

"[G]overnmental function" is defined as "an activity undertaken by a government, such as

national defense, intelligence missions, firefighting, search and rescue, law enforcement

(including transport of prisoners, detainees, and illegal aliens), aeronautical research, or

biological or geological resource management." 49 U.S.C. § 40125(a)(2). Courts have held that

---

[6] The parties do not dispute that an appropriate government body owns and operates the aircraft in question.

"[p]rotecting the 'health, safety, and well-being of the County's citizens are basic governmental functions.'" *Southern Blasting Servs., Inc. v. Wilkes County, N.C.*, 288 F.3d 584, 594 (4th Cir. 2002) (quotation omitted); *see also Gold Cross Ambulance & Transfer v. City of Kansas City*, 705 F.2d 1005, 1014 n.13 (8th Cir. 1983) (holding that "[t]he provision of ambulance service by Kansas City is a traditional governmental function designed to protect public health and safety" (citation omitted)).[7]

Although not binding authority, the Court finds the courts' reasoning in these cases persuasive and, therefore, the Court finds that medi-vac services are a "governmental function" and that both patients and medical personnel are "qualified non-crewmembers" because their presence is required to perform, and is associated with, a "governmental function." This is clearly the only reasonable interpretation of the law.[8]

---

[7] Further, Eileen Wilson, Senior Attorney to the Federal Aviation Administration, issued an opinion letter in which she opined that

> [a] medivac mission does constitute a governmental function under 49 U.S.C. § 40125(a)(2) so long as the aircraft is necessary for the successful completion of the mission. The statutory definition of "governmental function" uses the term "such as," thereby indicating the recited list of functions is not exhaustive. The FAA has concluded that medical evacuation may be included as a governmental function, so long as the use of an aircraft is necessary.

*See* Defendant TLC's Memorandum of Law at Exhibit "A." Although the Court has not relied on this letter in reaching its conclusion, it further makes clear that, contrary to Plaintiffs' assertion, merely because the governmental function is not listed in the statutory definition does not mean that it is not a "governmental function." *See* Plaintiffs' Memorandum of Law at 16.

[8] The statute defining "governmental function" lists "law enforcement (including transport of prisoners, detainees, and illegal aliens)" as examples of permissible "governmental functions." 49 U.S.C. § 40125(a)(2). The inclusion of this example clearly refutes Plaintiffs'

(continued...)

### *b. Commercial purposes*

Plaintiffs assert that Defendants' operation of medi-vac services is a commercial purpose because it is not "necessary." *See* Plaintiffs' Memorandum of Law at 15-21. Plaintiffs further claim that because they were "reasonably available" to respond to the medi-vac operations that Defendants conducted, Defendants' actions qualify as "commercial purposes." *See id.* at 16 (citing 49 U.S.C. § 40124(a)(1)).

The term "commercial purposes" is defined as

> the transportation of persons or property for compensation or hire, but does not include the operation of an aircraft by the armed forces for reimbursement when that reimbursement is required by any Federal statute, regulation, or directive, in effect on November 1, 1999, or by one government on behalf of another government under a cost reimbursement agreement if the government on whose behalf the operation is conducted certifies to the Administrator of the Federal Aviation Administration that the operation is necessary to respond to a significant and imminent threat to life or property (including natural resources) and that no service by a private operator is reasonably available to meet the threat.

49 U.S.C. § 40125(a)(1).

Contrary to Plaintiffs' assertions, the statute makes clear that only when the transportation is "by one government on behalf of another government" does the operation need to be "necessary."[9]

---

[8](...continued)
argument that the presence of medical personnel and the patient remove this operation from the definition of "governmental function." *See* Plaintiffs' Memorandum of Law at 22. If law enforcement agents and the prisoners do not convert prisoner transports to a commercial purpose, it is unclear how medical personnel and patients could do so.

[9] Moreover, assuming that the statute does require the operation to be "necessary" before it can be deemed a non-commercial purpose, Plaintiffs misconstrue the meaning of the word

(continued...)

-14-

In a different section of the regulations, the FAA provides a test for determining whether a service is provided for "compensation or hire."  "Where it is doubtful that an operation is for 'compensation or hire,' the test applied is whether the carriage by air is merely incidental to the person's other business or is, in itself, a major enterprise for profit." 14 C.F.R. § 1.1.  Although Plaintiffs allege in their proposed first amended complaint that Defendant State Police receives compensation for its medi-vac services, under this test, they fail to state a claim against Defendant State Police and both proposed additional defendants.

It is without question that, under this test, Defendant State Police and the proposed additional defendants do not receive compensation for their services as the regulations

---

[9](...continued)
"necessary" and further fail to allege that Defendants' services are not necessary.  Plaintiffs allege that Defendants' services were unnecessary because Plaintiffs were available to provide these services.  *See* Proposed First Amended Complaint at ¶ 49.  Such a rigid definition of "necessary" would lead to harsh results, implicating public welfare concerns.

In *F.T.C. v. Rockefeller*, 591 F.2d 182 (2d Cir. 1979), the Second Circuit discussed the definition of "necessary" in a different context and explained why courts should broadly construe that term.  *See id.* at 188.  The Second Circuit rejected the defendants' argument that the court should interpret the term "necessary" as requiring the FTC to pursue all "reasonably available alternatives" before acting.  *See id.*  The court held that such a definition was inconsistent with the intent of the provision and impractical.  *See id.*  Such a narrow definition, the court held, would require "time consuming" measures to determine if such an alternative was reasonably available.  *See id.*

Public policy and common sense direct the same result here.  If the Court were to interpret "necessary" narrowly, as Plaintiffs urge, Defendants would be required to waste precious time before responding to an emergency situation to determine if Plaintiffs were available to respond.  Moreover, it would require Defendants not to respond to an emergency call even if they were able to respond faster based on their proximity to the accident, so long as Plaintiffs were available.  Such irrational results dictate that Plaintiffs' argument must fail.

As such, even if Defendants' actions must be "necessary" to constitute a non-commercial purpose, Plaintiffs have failed to allege that Defendants' medi-vac operations were not "necessary."

contemplate. Even if they did receive payment for the medi-vac services they rendered, it cannot be said that the carriage by air is anything but incidental to their primary governmental functions. Defendants' medi-vac services are in no way "a major enterprise for profit," and Plaintiffs do not allege them to be such.

Plaintiffs attached several documents that the National Transportation Safety Board ("NTSB") and the Government Accounting Office ("GAO") published in support of their contention that Defendants need to be certified under part 135 of the Regulations. *See* Affidavit of Richard A. Dollinger sworn to January 15, 2008 ("Dollinger Aff."), at Exhibits "A" - "C." One such report states that, when carrying patients, air ambulances must operate under part 135 of the regulations. *See id.* at Exhibit "C," at 10. Taken out of context, this statement strongly supports Plaintiffs' proposition; however, just prior to that statement, the report makes clear that this section is discussing the authority of the FAA over "***commercial*** aviation activities performed by air carrier operators, a group that includes operators of air ambulances." *See id.* at 9 (emphasis added). Accordingly, this statement does not apply to air ambulances operating as public aircraft as discussed above.

For the above-stated reasons, the Court holds that the aircraft Defendant State Police operates are "public aircraft" and, therefore, grants Defendant State Police's motion to dismiss.[10] Further, the Court denies Plaintiffs' request to amend their complaint insofar as they seek to add the Acting Superintendent of the New York State Police and the Onondaga County Sheriff because such an amendment would be futile.

---

[10] Although the Court already dismissed Plaintiffs' claims against Defendant Sheriff's Department, it is clear that its aircraft are "public aircraft" as well, providing another reason why Plaintiffs' claims against Defendant Sheriff's Department must fail.

**D.     Defendants TLC and Council**

*1. Aiding and abetting*

As discussed above, Defendants State Police and Sheriff's Department are not operating aircraft in violation of the FAA. It follows, therefore, that Defendants TLC and Council cannot aid and abet the violation of a law that the primary actor did not violate. As such, Plaintiffs have failed to state a cause of action against Defendants TLC and Council for aiding and abetting.[11]

*2. State-law claims*

Application of supplemental jurisdiction is discretionary and "it requires a balancing of the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir. 1979) (citation omitted). Under the circumstances of this case and in the interest of

---

[11] Even if Defendants State Police and Sheriff's Department did violate the FAA as Plaintiffs allege, Plaintiffs' cause of action for aiding and abetting against Defendants TLC and Council would still fail to state a claim. Since there is not a general aiding and abetting statute applicable to civil actions, the courts have developed a test to determine when persons can be liable for aiding and abetting under a statute that does not contain an express clause providing for such liability. Civil liability for aiding and abetting will attach to a federal statute when (1) it advances the goals of the particular statute and (2) when the structure and text of the statute indicate a congressional intent to incorporate such liability. *See Petro-Tech, Inc. v. Western Co. of N. Am.*, 824 F.2d 1349, 1356 (3d Cir. 1987) (citation omitted). There is no indication in the statute that Congress intended to incorporate such liability.

Although Plaintiffs allege that Defendants TLC and Council are "aiding and abetting" these alleged violations, their proposed first amended complaint could be read to assert that these Defendants are violating the FAA by acting as "indirect air carriers" pursuant to 49 U.S.C. § 40102(a)(2). *See* Proposed First Amended Complaint at ¶ 63. Again, however, such a claim is without merit. These Defendants cannot indirectly provide "air transportation" if, as discussed above, Defendants State Police and Sheriff's Department are not providing "air transportation," which they are not.

judicial economy, the Court will exercise supplemental jurisdiction over Plaintiffs' state-law claims. *See McIntyre v. Longwood Cent. Sch. Dist.*, 658 F. Supp. 2d 400, 411 n.3 (E.D.N.Y. 2009) (citations omitted).

Tortious interference claims arise in two situations: (1) when there is a claim of interference with an enforceable contract and (2) when there is either a claim of interference with a non-binding or unenforceable contract, or when there is a claim of interference with a prospective contract or business relationship. *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (2004). Each of these state tort claims has different elements. *See id.*

"Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 424 (1996) (citations omitted).

Plaintiffs' proposed first amended complaint does not contain allegations necessary to maintain this supplemental state-law claim. Most notably, Plaintiffs fail to allege the existence of a contract or that Defendants had knowledge of such a contract. The only element that Plaintiffs sufficiently allege is that they suffered damages due to loss of business. It is unclear how Defendants could be liable under this tort, as any arrangement between Plaintiffs and any patient in need of air medical services is wholly speculative because people do not know when or if they will need such services until the need arises.

The required elements of tortious interference with prospective business relations are (1) business relations with a third party; (2) the defendant's interference with those business

relations; (3) the defendant acting with the sole purpose of harming the plaintiff or using wrongful means; and (4) injury to the business relationship. *See Carvel Corp.*, 3 N.Y.3d at 189-90 (quotation and other citations omitted).

Under this tort, a plaintiff must show a higher degree of wrongful conduct than with tortious interference with a contract, which only requires the procurement of the third-party's breach. *See Carvel Corp.*, 3 N.Y.3d at 190. As a general rule, in tortious interference with prospective business relations, "the defendant's conduct must amount to a crime or an independent tort." *Id.*

Again, Plaintiffs fail to allege the elements of this tort. As discussed above, Plaintiffs failed to allege that Defendants TLC's and Council's conduct was an independent tort; and they further failed to allege that criminal or other tortious conduct was involved. Further, Plaintiffs have not alleged that Defendants' sole purpose was to cause them harm. Moreover, Plaintiffs fail to allege facts sufficient to show any business relation with a third party because any such relationship would be purely speculative and based entirely on whether that third party was ever going to be injured and in need of medi-vac services.

For all of these reasons, the Court grants Defendants TLC's and Council's motions to dismiss Plaintiffs' tortious interference with business relations claims.

**E.  Motion to amend the complaint**

As discussed above, Plaintiffs have failed to allege facts sufficient to state a cause of action against any of the Defendants. The proposed amendments do not change this. Accordingly, the Court denies Plaintiffs' motion to amend as futile.

## V. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motions to dismiss are **GRANTED** in their entirety; and the Court further

**ORDERS** that Plaintiffs' cross-motion to amend their complaint is **DENIED** as futile; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: February 26, 2010
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge